IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

TITLE PRO CLOSINGS, L.L.C., and )
R. BRUCE HALL, )
 )                   Case No. 1:11-cv-673-MEF
       Plaintiffs, )              (WO—Publish)
 )
v. )
 )
TUDOR INSURANCE COMPANY, )
 )
       Defendant. )

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This cause comes before the Court on the Motion to Remand (Doc. # 7) filed by

the plaintiffs—Title Pro Closings, L.L.C. and Bruce Hall—in response to the Notice of

Removal (Doc. # 1) filed by the defendant, Tudor Insurance Company. The remand

motion does not dispute the Court's subject-matter jurisdiction; it focuses solely on the

procedural propriety of removal. The parties have fully briefed the procedural issues, and

after careful consideration of the arguments and relevant evidence, the Court finds that

the plaintiffs' motion is due to be DENIED on those grounds.

### II. BACKGROUND

This case initially began on April 27, 2010, when Robert and Bethanie Peters sued

Title Pro and another defendant in the Circuit Court of Houston County, Alabama, for

negligence, breach of contract, and fraud. Shortly afterward, on June 1, 2010, Title Pro

sent its insurer—Tudor Insurance Company—a letter about the claims filed by the

Peterses. Although the plaintiffs had not joined the insurer in the action, Tudor filed a

motion to stay the proceedings two days later, which the circuit court denied on August

8, 2010. Then, on August 27, 2010, Title Pro filed a "Cross-Claim for Declaratory

Judgment"[1] against Tudor. The case laid dormant for about a year at this point.

Title Pro roused the case on July 25, 2011, by filing a Motion to Sever and Set for

Trial (Doc. # 1-3). Title Pro's severance motion sought to cleave its claim against Tudor

from the underlying suit brought by the Peterses. The circuit court granted the motion on

August 7, 2011, and set the case for trial. Tudor filed its Notice of Removal (Doc. # 1)

on August 22, 2011—fifteen days after receiving the circuit court's order.

### III. WAS REMOVAL PROCEDURALLY DEFECTIVE?

The parties do not dispute the Court's subject-matter jurisdiction over the case.[2]

Title Pro instead takes issue with the procedural propriety of removal, focusing on the

time in which Tudor filed its notice and alleging that it came too late.

---

[1] Title Pro called this a cross-claim, but it more closely resembles an interpleader action. Under Rule 13 of the *Alabama Rules of Civil Procedure*, a cross-claim is a claim "by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein . . . ." Title Pro thus put the cart before the horse by filing a "cross-claim" against Tudor: neither Title Pro nor the plaintiffs had joined the insurer in the action at that point. Rather than a cross-claim, Title Pro filed an impleader action, a type of third-party practice. *See* Ala. R. Civ. P. 14.

[2] After an independent inquiry, the Court finds adequate grounds for subject-matter jurisdiction based on diversity. *See* 28 U.S.C. § 1332(a) (requiring complete diversity and an amount in controversy that exceeds $75,000, exclusive of interest and costs). Although Tudor improperly pled Title Pro's citizenship in its removal notice, *see, e.g.*, *Rolling Greens MHP v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004) (requiring removing party to list all members of L.L.C. and allege their individual citizenships), its failure is a procedural defect that can be cured, *see* 28 U.S.C. § 1653; *Corporate Mgmt. Advisors, Inc. v. Artjen Complexus, Inc.*, 561 F.3d 1294, 1296 (11th Cir. 2009) ("we conclude that the failure to establish a party's citizenship at the time of filing the removal notice is a 'procedural, rather than jurisdictional, defect.'" (quoting *In re Allstate Ins. Co.*, 8 F.3d 219, 221 (5th Cir. 1993))), and the Court is otherwise satisfied that the parties are citizens of different states and that the insurance policy at issue has a value exceeding the $75,000 minimum.

### A. The remand standard

Federal courts are courts of limited jurisdiction. *See, e.g.*, *Kokkonen v. Guardian Life Ins. Co. Of Am.*, 511 U.S. 375, 377 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994); *Wymbs v. Republican State Executive Comm.*, 719 F.2d 1072, 1076 (11th Cir. 1983). As a result, they only have the power to hear cases over which the Constitution or Congress has given them authority. *See Kokkonen*, 511 U.S. at 377. Congress has empowered the federal courts to hear a case removed by a defendant from state to federal court if the plaintiff could have brought the claims in federal court originally. *See* 28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). To accomplish a successful removal, the removing defendant bears the burden of showing that a district court has subject matter jurisdiction over an action. *See Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996) (putting the burden of establishing federal jurisdiction on the defendant seeking removal to federal court). And although the Eleventh Circuit favors remand where federal jurisdiction is not absolutely clear, *see Burns*, 31 F.3d at 1095, "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996).

### B. The removal statutes

The removal statute, 28 U.S.C. § 1441(a), allows a defendant to remove an action from state to federal court if the plaintiff could have originally brought his claim in federal court. The statute governing the procedural propriety of removal, 28 U.S.C. § 1446(b), allows for two types of removable actions: (1) those removable on the basis of

an original pleading and (2) those that later become removable upon receipt of "a copy of

an amended pleading, motion, order or other paper." *Lowery v. Ala. Power Co.*, 483 F.3d

1184, 1212 (11th Cir. 2007) (citing 28 U.S.C. § 1446(b)). In both types of case, "a

defendant must remove within thirty days of receiving the document that provides the

basis for removal." *Id.* But the second type of removable case has a catch: a diversity

case that becomes removable sometime after the filing of the complaint cannot not be

removed if more than year passes from the "commencement of the action." 28 U.S.C. §

1446(b).

## C. Analysis

The propriety of Tudor's removal turns on when the action commenced and

whether Tudor removed the case within thirty days of it becoming removable. Title Pro,

on the one hand, claims the case commenced either when the Peterses sued Title Pro or

when Tudor sought to stay those proceedings by filing a motion in state court. Either of

these dates would push Tudor's removal notice outside of one year, thus making the

removal untimely. Title Pro also asserts the case became removable when Tudor received

a letter—dated July 3, 2011—informing the company that the amount in controversy

exceeded $75,000. If true, this would also make Tudor's removal notice untimely,

because the thirty day window would have closed on August 3, 2011.

Tudor, on the other hand, contends the action commenced on August 27,

2010—the date when Title Pro filed its claim against Tudor. And the insurer claims that

the case only became removable after the circuit court, on August 7, 2011, granted Title

Pro's motion to sever. According to Tudor, the circuit court's severance order started the

thirty-day period and, by filing its removal notice fifteen days later, the insurer timely

removed the case.

### 1. When did the action commence?

State law determines the meaning of the word *commencement* found in § 1446(b).

*See Herb v. Pitcairn*, 324 U.S. 117, 120 (1945) ( "Whether any case is pending in the

Illinois courts is a question to be determined by Illinois law."); *Cannon v. Kroger Co.*,

837 F.2d 660 (4th Cir. 1988) ("It is clear that a federal court must honor state court rules

governing commencement of civil actions when an action is first brought in state court

and then removed to federal court . . . ."); *Eufaula Drugs, Inc. v. Tmesys, Inc.*, 432 F.

Supp. 2d 1240, 1246 n.8 (M.D. Ala. 2006). Under Rule 3 of the *Alabama Rules of Civil

Procedure*, "a civil action is commenced by filing a complaint with the court."  Equally

important, a claim severed under Alabama law loses any connection it had to the original

case—the severed claim instead becomes "an entirely separate and independent action."

*Category 5 Mgmt. Group v. Nat'l Cas. Ins. Co.*, No. 09-cv-633, 2010 WL 2330305, at *4

(S.D. Ala. May 20, 2010) (citing *Key v. Robert M. Duke Ins. Agency*, 340 So. 2d 781,

783 (Ala. 1976)).

Here, Title Pro filed its third party declaratory judgment complaint against Tudor

on August 27, 2010. This is the date of commencement: Rule 3 specifically refers to the

filing of a *complaint*—not merely an appearance—with the court. Title Pro's argument

that Tudor's motion to stay the case triggered the clock on § 1446's one-year period

therefore fails. So too does Title Pro's assertion that Tudor commenced the action by

intervening in the case. There is no evidence that the circuit court granted an intervention

motion by Tudor—indeed, none of the pleadings submitted to this Court suggest that

Tudor so moved. Nor did the circuit court issue an order to this effect, a necessary

condition for an uninvited third party to be joined in the action as an intervener. *See* Ala.

R. Civ. P. 24 cmt. ("An order authorizing intervention is, of course, necessary before the

would-be intervenor becomes a party." (citing *Cowan v. Tipton*, 1 F.R.D. 694 (E.D.

Tenn. 1941) ("It is plain that a person cannot become an intervening party on his own

motion.")). So because the one-year period started on August 27, 2010, Tudor's filing of

a notice of removal on August 22, 2011, beats the clock by five days.

**2. Did Tudor remove the case within thirty days of it becoming removable?**

A third-party defendant cannot remove a diversity case from state to federal court.

*See* 28 U.S.C. §§ 1441(a) (allowing only "defendants" to remove), (c) (allowing removal

of "separate and independent" claims joined with non-removable causes of action only

when claims based on federal question jurisdiction); *First Nat'l Bank of Pulaski v. Curry*,

301 F.3d 456, 461 (6th Cir. 2002) (finding third-party defendants not "defendants" under

§ 1441(a)); *Werner v. KPMG LLP*, 415 F. Supp. 2d 688 (S.D. Tex. 2006) ("A third-party

defendant cannot remove a case to federal court on the basis of diversity jurisdiction.");

*Nat'l Am. Ins. Co. v. Advantage Contract Srvs., Inc.*, 200 F. Supp. 2d 620, 621–22 (E.D.

La. 2002) (holding third-party defendant could not remove on basis of diversity

following the 1990 amendments to § 1441(c)); 14C Wright, Miller & Cooper, *Federal

Practice & Procedure* § 3731 (stating third-party defendants brought into state action by

original defendant cannot exercise right of removal). Allowing a third-party defendant to

remove an action would force the original plaintiff to litigate in federal court, thereby

undermining two core principals of federalism—limited federal jurisdiction and deference to the plaintiff's choice of a state court forum. *See, e.g.*, *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994).

But when a state court severs the third party claim from the original action—thus leaving the original plaintiff in state court—allowing removal by the third-party defendant does not trigger the same federalism concerns. Thus, a state court's decision to sever the original action from the third party claim transforms the original defendant into a plaintiff and the third-party defendant into a defendant capable of removing the action. *See Central Ga. Ry. Co. v. Riegel Textile Corp.*, 426 F.2d 935, 938 n.7 (5th Cir. 1970)[3] (allowing third-party defendant to remove severed claim on basis of diversity because removal did not deprive original plaintiff of his chosen forum); *but see Moss Land & Mineral Corp. v. Fid. & Cas. Co. of NY*, 2003 WL 21360803, at *3 (N.D. Ala. 2003) (Acker, J.) ("Fidelity's status as a cross-claim defendant did not change magically at the moment of the dismissal of the original action. No metamorphosis took place to make the ugly non-removable caterpillar into a beautiful removable butterfly.").[4]

_____

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down before the close of business on September 30, 1981.

[4] Judge Acker's literal reading of the word "defendant or defendants" in § 1441(a) makes sense in light of the federalism concerns requiring federal courts to interpret the removal statutes narrowly. Yet such a reading makes less sense when used to foreclose the possibility of a non-defendant party transforming into a defendant capable of removal. Indeed, paragraph two of § 1446(b) explicitly allows a non-removable lawsuit to morph into removable one. It follows that one way to accomplish this metamorphosis is by realigning and re-labeling the parties so as to reflect more accurately their actual status in the litigation at the time of removal. *See Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 70 (1941); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 n.13 (11th Cir. 1994) ("Jurisdictional facts are

Here, because a third-party defendant cannot remove a diversity case from state to federal court, Title Pro's action against Tudor was not removable on July 3, 2010. Tudor could only remove the action once the circuit court granted Title Pro's severance motion. When the state court did this, Title Pro became the plaintiff and Tudor the defendant. *Cf. Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 70 (1941) ("Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who are defendants. It is our duty, *as it is that of the lower federal courts, to look beyond the pleadings* and *arrange the parties according to their sides in the dispute*.") (emphasis added). The circuit court's decision to sever the case thus produced "an . . . order . . . from which it [was] first [] ascertained that the case" had become removable. *See* 28 U.S.C. § 1446(b). Tudor filed its removal notice within fifteen days of the circuit court handing down its severance order. The insurer, therefore, removed the case in a timely manner.

## IV. Is Jurisdiction over this Case Discretionary?

Title Pro claims that the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, governs this action and, because it does, federal jurisdiction is discretionary. This is true enough. *See id.* at § 2201(a) (". . . any court of the United States . . . *may*

---

assessed on the basis for the plaintiff's complaint as of the time of removal."). Judge Acker may well have anticipated and left open the door to this possibility where exercising federal jurisdiction would not undermine the original plaintiff's choice of forum. *See Moss Land & Mineral*, 2003 WL 21360803 at *3 ("For a non-removable case suddenly to become removable, the presence of federal jurisdiction must appear from the voluntary action of the non-removing party. Otherwise, the non-removing party would be deprived of its right to appeal from the state court order that it did not request or agree to."). So this case may well be one in which Judge Acker would bless the removal: it was *Title Pro's* voluntary act—moving to sever the claims—that allowed the caterpillar to sprout wings and flutter off into federal court.

declare the rights . . . of any interested party . . . .") (emphasis added); *Wilton v. Seven*

*Falls Co.*, 515 U.S. 277, 287 (1995). From there, however, Title Pro invokes the

*Brillhart* doctrine, which favors remanding federal declaratory judgment actions when

there is a parallel action in state court. *See Brillhart v. Excess Ins. Co.*, 315 U.S. 491

(1942). But as this Court has stated, *Brillhart* does not apply where "neither the parties

nor the issues are the same in the underlying state suit." *Specialty Underwriters Alliance*

*v. Peebles McManus L.L.C.*, 643 F. Supp. 2d 1298, 1301 (M.D. Ala. 2009) (Fuller, C.J.).

And where *Brillhart* does not apply, courts should exercise their discretion to hear

declaratory judgments "liberally in favor of granting [declaratory] relief in order to

accomplish the purposes of the Declaratory Judgment Act." *Id.* (internal citations and

quotations omitted).

Here, there is no pending declaratory judgment action in the underlying suit, nor

are the parties the same. This Court, moreover, "routinely adjudicates coverage disputes

brought under the Declaratory Judgment Act when there is an underlying state court case

on the merits, which involves different issues and different parties (as is the case here)."

*Peebles McManus*, 643 F. Supp. 2d at 1301 (citing *Allstate Indem. Co. v. Lewis*, 985 F.

Supp. 1341, 1345–46 (M.D. Ala. 1997) (Thompson, C.J.); *Guaranty Nat. Ins. Co. v.*

*Beeline*, 945 F. Supp. 1510 (M.D. Ala. 1996) (Thompson, C.J.); *State Auto Prop. & Cas.*

*Ins. Co. v. Calhoun*, No. 2:05-CV-122-MEF, 2005 WL 2406055 (M.D. Ala. 2005)

(Fuller, C.J.); *Allstate Ins. Co. v. Smith*, No. 3:05-CV-49, 2005 WL 1309019 (M.D. Ala.

May 31, 2005) (Albritton, J.)). The case thus falls outside of *Brillhart*'s reach. Since

exercising jurisdiction here comports with the underlying purposes of the Declaratory

Judgment Act—namely, to provide "a mechanism to adjudicate disputes when the [party] is unsure of his duties and seeks to avoid either a breach or unnecessary expenditures in the absense of such a duty," *Peebles McManus*, 643 F. Supp. 2d at 1302—the Court will exercise jurisdiction over this case.

## VI. CONCLUSION

For the reasons discussed above, it is hereby ORDERED that Title Pro's Motion to Remand (Doc. # 7) is DENIED.

DONE this the 17th day of January, 2012.

/s/ Mark E. Fuller
UNITED STATES DISTRICT JUDGE
